IN THE UNITED STATES DISTRICT COURT
FOR
THE MIDDLE DISTRICT OF ALABAMA


THE UNITED STATES
OF AMERICA

vs.                                CRIMINAL ACTION NO.
                                   2:04-CR-09-T
JOANNA NICOLE HOOKS




SENTENCING PROCEEDINGS



* * * * * * * * * *


BEFORE:       The Hon. Myron H. Thompson

HEARD AT:     Montgomery, Alabama

HEARD ON:     January 31, 2005

APPEARANCES:  Matt Miner, esq.

              John M. Poti, Esq.

Page 2

1  WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE
   THE HON. MYRON H. THOMPSON ON JANUARY 31, 2005 AT THE
2  UNITED STATES COURTHOUSE IN MONTGOMERY, ALABAMA:

3

4         THE COURT: The Court calls the case of
5  United States of America vs. Joanna Hooks, criminal
6  action number 2:04-CR-9-T.
7         Is this Miss Hooks?
8         MR. POTI: Yes, Your Honor.
9         THE COURT: Now, Miss Hooks, have you and
10 your attorney reviewed the Presentence Report,
11 including any revisions that may have been after the
12 initial disclosure.
13        THE DEFENDANT: Yes, sir, Your Honor.
14        THE COURT: Was there a plea in this case?
15 I think there was a trial, is that correct?
16        MR. POTI: There was a trial, Your Honor.
17        THE COURT: So there was no plea and there
18 was no plea agreement?
19        MR. POTI: That's correct.
20        THE COURT: Now what are the issues for me
21 at the sentencing today?
22        MR. MINER: Matthew Miner appearing for the
23 United States, Your Honor.
24        I believe there are three issues, aside from
25 the basic question of how Your Honor is going to treat

Page 3

1  the guidelines. And I'm not going to suggest to know
2  how Your Honor is going to treat the guidelines --
3         THE COURT: I think the Supreme Court has
4  told me how to treat them.
5         MR. MINER: Well I just mean in terms of how
6  advisory you'll treat them.
7         THE COURT: That's a way of putting it.
8         MR. MINER: I believe there are three
9  issues, and Mr. Poti can disagree with me on this but
10 we can talk about it. One should be how the Court
11 should treat the drug amount in terms of either the
12 guidelines or the statute. The second would be
13 whether the obstruction of justice guideline should be
14 applied in this case based on Miss Hooks' testimony at
15 trial and/or her statement to Probation Officer
16 Sellers. And the third is whether the Court should
17 consider and how the Court should consider the recent
18 evidence as to the altercation at the Montgomery City
19 Jail.
20        If Your Honor would like, I can try to frame
21 the disputes and see if Mr. Poti has any disagreement.
22 As to the drug quantity, the drug amount that was
23 charged in the indictment was in excess of five grams.
24 That's the Apprendi level that had to be charged for
25 the mandatory minimum of five years imprisonment up to

Page 4

1  twenty years to trigger that sentence. That is what
2  was found by the jury at trial.
3         THE COURT: Well, they found at least five.
4         MR. MINER: That's right, Judge. I believe
5  it had to be in excess of five grams and that was what
6  was found.
7         The testimony at trial established, at least
8  the only testimony at trial that went to the exact
9  drug quantity was twenty-two grams or slightly above
10 that. That was not specifically found by the jury,
11 but that was the evidence at trial. The jury was
12 never asked to make that specific finding, and that
13 was not charged in the indictment.
14        Mr. Poti, I believe, makes an argument that
15 is consistent with what the Blakely arguments were
16 prior to Booker, that it is not being charged or
17 specifically found by the jury the Court should look
18 only at the in excess of five grams quantity, which
19 would put the Court under level twenty-six under the
20 guideline range. The United States would argue that
21 in light of Booker and in light of the guidelines and
22 the Court's ability to make a finding by a
23 preponderance of the evidence, that the testimony at
24 trial being twenty-one grams --
25        THE COURT: Is it twenty-two or is it

Page 5

1  twenty-one?
2         MR. MINER: I'm sorry, twenty-two grams.
3  That that should be what the Court should consider and
4  find, which would put Miss Hooks on a level
5  twenty-eight not counting obstruction of justice or
6  anything else.
7         THE COURT: I'll hear from you, Mr. Poti.
8         MR. POTI: Yes, Your Honor. As far as that
9  issue goes, that sums it up. Our stance is that upon
10 applying the cases of Apprendi and Blakely, that the
11 maximum sentence statutorily would be what is in the
12 guideline range. And as Mr. Miner said --
13        THE COURT: What do you mean? I don't think
14 that's what Booker says. In fact, Booker rejected
15 that remedial argument. That's not what Booker says.
16 I'm not stuck within the guideline range. They're
17 just advisory.
18        MR. POTI: I understand. Yes, sir.
19        Our contention is that Booker does not
20 require you -- require any compliance with Blakely
21 when calculating an advisory guideline. The question
22 then becomes are judges permitted to demand that all
23 sentence enhancing facts be found by a jury or
24 admitted by the defendant. Of course you are
25 permitted to do that, and in fact our argument would

## Page 6

1  be that you should. And that would be the most
2  prudent thing to do.
3       THE COURT: Should what?
4       MR. POTI: For lack of a better term, apply
5  Blakely to anything that would take her out of the
6  sentencing guideline range.
7       THE COURT: I thought Booker says I'm to
8  consult the guidelines, the guidelines are advisory
9  and I should exercise my discretion applying the
10 factors in section 3553(a).
11      MR. POTI: Yes, sir.
12      THE COURT: And that's all it says, as far
13 as the bottom line is concerned, isn't it? I don't
14 think it said anything about using an advisory jury or
15 being locked into a guideline range. That would be an
16 application of my responsibility to exercise
17 discretion. It would almost be in violation of
18 Booker, wouldn't it?
19      MR. POTI: I don't think so, because what
20 you're doing is you're applying and enforcing her
21 rights under the Constitution that have come through
22 both --
23      THE COURT: Booker defined what those rights
24 are, and that's what I follow. The Supreme Court says
25 to use my discretion, and I'm going to use my

## Page 7

1  discretion. I think otherwise it would be to violate
2  Booker. In fact, I think they vacated a District
3  Court order. They actually did that, if I remember
4  correctly.
5       But anyway, what's your other argument? If
6  you have one.
7       MR. POTI: The second objection we have,
8  Your Honor, is to two levels enhancement that is in
9  the presentence report, and then the Government is
10 asking for obstruction of justice.
11      THE COURT: Well, let's talk about the
12 amount of drugs matter. Your objection is overruled.
13 The Court finds by a preponderance of the evidence
14 that Hooks possessed twenty-two point one grams of
15 cocaine. The evidence clearly shows that. In fact,
16 the evidence reflects that beyond a reasonable doubt.
17 That objection is overruled. Which means that I can
18 sentence her anywhere from what is it, five years to
19 twenty?
20      MR. MINER: That is correct, Your Honor.
21      THE COURT: Using the guidelines as
22 advisory. And I'll consider the other two objections.
23 I have one about obstruction of justice, right?
24      MR. POTI: Yes, sir.
25      THE COURT: What's your response to Mr.

## Page 8

1  Miner's comments on that?
2       MR. POTI: Two things. First, the
3  Government wants to use statements that Ms. Hooks made
4  right after her arrest in comparison to the statements
5  made when she took the stand at trial. And then also
6  some statements she made to the probation officer
7  while being interviewed during the compilation of the
8  presentence report.
9       THE COURT: Now the statements she made
10 during the presentence interview was what?
11      MR. POTI: It was contrary to the statements
12 she made on the stand.
13      THE COURT: What did she say during the
14 presentence interview?
15      MR. POTI: Her statement was that the drugs
16 that she had were not found at the bus station, but
17 she found them in her house and she thought they
18 belonged to her boyfriend who she was having an
19 argument with, and she took them to give them back to
20 him and tell him not to bring them into the house.
21      THE COURT: Okay. And that's a statement
22 she made to Probation?
23      MR. POTI: Yes, Your Honor.
24      THE COURT: And the statement she made at
25 trial was what?

## Page 9

1       MR. POTI: That she had found the bag
2  containing the substance in the bus station as she was
3  waiting for her brother to come in on a scheduled bus.
4       THE COURT: That's right. She found them
5  where, now?
6       MR. POTI: In the ladies' room.
7       THE COURT: Right. A pretty preposterous
8  statement.
9       But anyway, and the third statement was one
10 she made after arrest?
11      MR. POTI: Right after arrest, Your Honor.
12      THE COURT: What was that statement?
13      MR. POTI: That pretty much went along with
14 her trial testimony other than she said during that,
15 that she knew what was in the bag, whereas she later
16 recanted that and said she really didn't know what was
17 in the bag.
18      THE COURT: Now why do you wish me to not
19 consider the statement made during her presentence
20 interview?
21      MR. POTI: Primarily, Your Honor, because I
22 was not present.
23      THE COURT: What's the law on that?
24      MR. POTI: Well, Miss Hooks is entitled to
25 her attorney present.

Page 10

1  THE COURT: Have you researched it? What is
2  the case law?
3  MR. POTI: I don't have that specific law
4  currently.
5  THE COURT: Why haven't you researched it
6  and found out what the case law is on this? You have
7  an objection and you're arguing that an attorney is
8  required to be present at a presentence interview;
9  pretty fundamental issue; what's the case law? Have
10 any courts looked at that? Has the Eleventh Circuit
11 looked at it in particular? Where is my case law?
12 MR. POTI: I don't have it for you, Your
13 Honor.
14 THE COURT: Where's my case law?
15 MR. MINER: Assuming, arguendo, that there
16 is a Sixth Amendment violation, and that could be the
17 only violation I could see here, she was not at that
18 point in custody, this was between the period where
19 she was found guilty and before she reported to jail
20 so she would not have been in custody for custodial
21 interrogation --
22 THE COURT: What's the case law as to
23 whether she was in custody and what her rights are
24 when talking to her probation officer or presentence
25 officer?

Page 11

1  MR. MINER: Let's assume at first there was
2  a violation.
3  THE COURT: I'm not asking you whether there
4  was a violation. I'm just asking what is the case law
5  as to what her Sixth Amendment rights are when she
6  talks to a probation officer?
7  MR. MINER: And, Your Honor, I'd move
8  straight to Michigan V. Harvey and Harris v. New York.
9  THE COURT: And what do they say?
10 MR. MINER: They both deal with statements
11 -- In Harris v. New York, it deals with a Fifth
12 Amendment statement in violation of the Fifth
13 Amendment. And in Michigan V. Harvey, a Sixth
14 Amendment violation. In both cases the Supreme Court
15 said that such statements could be considered by the
16 jury in impeaching trial testimony to show that the
17 person had lied on the stand. That's the purpose for
18 which I wanted to bring in the statement made to
19 Probation Officer Sellers.
20 THE COURT: She says that she was entitled
21 to have an attorney present at her supervised release
22 interrogation or interview, we'll call it. Is there
23 any case law on that issue?
24 MR. MINER: On that issue, Judge, I did not
25 research that issue because I think Michigan v. Harvey

Page 12

1  resolved the issue as it pertains to this dispute.
2  Because I'm using it to essentially show the Court
3  that her trial testimony was perjury.
4  THE COURT: Oh, I see. So you're saying
5  you're not using it independently, it's her trial
6  testimony you contend is the obstruction, and you're
7  using these other statements to show how it is
8  obstruction.
9  MR. MINER: Yes, Your Honor. It simply
10 shows that she was lying on the stand because it's a
11 preposterous story, and her story to Probation Officer
12 Sellers --
13 THE COURT: Well I've already said that.
14 That she found it in the toilet, I think, was pretty
15 much rejected by the jury too. A pretty outrageous
16 story.
17 MR. MINER: I believe that Miss Sellers, if
18 she would have known --
19 THE COURT: You don't need that statement to
20 the probation officer to show that her comment, her
21 statement at trial, was incredible. When I heard it I
22 didn't believe it.
23 But anyway, and then you have her statement
24 when she was arrested. But I don't see why you all
25 didn't research the issue of whether a person has a

Page 13

1  Sixth Amendment right when they talk to their
2  supervising probation officer.
3  MR. MINER: And I understand the question,
4  Your Honor. Frankly, if Michigan v. Harvey was not
5  the first thing that came to my mind to wash away the
6  issue I would have researched that, however in my mind
7  Michigan v. Harvey explained how I could use this,
8  even assuming arguendo there was a Sixth Amendment
9  violation, it could still be used for the purpose of
10 establishing an obstruction of justice and perjury in
11 the trial.
12 THE COURT: Well don't come back to court
13 again without researching the issue, which is in this
14 case whether someone has the right to counsel when
15 they are interviewed by the probation officer. And
16 there is case law on that.
17 MR. MINER: Yes, Your Honor.
18 THE COURT: Unfortunately, it's not resolved
19 in our own circuit, but there is case law on it. And
20 from my preliminary research, I was hoping that you
21 all would enlighten me even more.
22 The Eleventh Circuit has said that other
23 circuits have rejected the argument that you have a
24 right to counsel at a presentence interview by a
25 probation officer because it's not a critical stage of

Page 14

1 the criminal proceedings and that Sixth Amendment
2 rights attend. And that case is United States v.
3 Simpson, 904 F.2d 607. It appears that the Ninth
4 Circuit may have held to the contrary at 962, 1418,
5 United States v. Rodriques Razzo. But then it appears
6 the Ninth Circuit may have held to the contrary in an
7 earlier case, Bowelman vs. United States 692, 565.
8 And in that Eleventh Circuit opinion you'll find some
9 other cases that they contend stand for that
10 proposition that you don't have the Sixth Amendment
11 right.
12    But anyway, I'm not sure it's even critical,
13 as I said. I believe her testimony at trial was that
14 she had found it in the bathroom, and I believe she
15 said it was just sitting there, or something like
16 that.
17    MR. MINER: I believe the testimony was,
18 Your Honor, that it fell out of someplace between the
19 two toilet paper tubes.
20    THE COURT: Right. But she didn't claim
21 that she knew what was in it, if I remember correctly.
22    MR. MINER: And that's the point that I
23 think brings us to its materiality.
24    THE COURT: Well the jury clearly found she
25 knew what she had.

Page 15

1    MR. MINER: Yes, Your Honor.
2    THE COURT: And she was charged here with
3 what, aiding and abetting, possession in excess of
4 five grams of cocaine base?
5    Anyway, even excluding the testimony that
6 was given to the probation officer, it's clear she
7 lied on the stand. I mean, you'd have to be gullible
8 to buy that. In fact, I think she probably hurt
9 herself more when she testified to that effect than
10 she helped herself, as I'm sure the jury heard that.
11 And it was so incredulous, that I'm sure it was almost
12 as if she was saying yes, it's mine, I'm guilty. It
13 was so preposterous.
14    So your objection is overruled again. She
15 clearly obstructed justice under the guidelines.
16    What's the final objection?
17    MR. MINER: Judge, I don't know if this is
18 an objection. This is simply something that the
19 United States received on the date that the sentencing
20 memorandum from the Government was due. It was
21 information regarding this assault at the Montgomery
22 City Jail. This was an incident between Miss Hooks
23 and one other inmate. I believe that some photographs
24 have been provided through Probation.
25    I'm not going to belabor the point, and I'm

Page 16

1 not going to bring in the other inmate. I don't think
2 it's an upward departure type of situation. I don't
3 think there is a dispute that the fight occurred or
4 that these are the injuries. I just think that the
5 Court needs to have this as part of the history and
6 characteristics of the defendant.
7    THE COURT: So you're not asking for any
8 adjustment in the guidelines based on this?
9    MR. MINER: No, Your Honor.
10    THE COURT: So I can sustain the defendant's
11 objection, however at the point of sentencing he wants
12 the Court to be aware of this.
13    MR. MINER: In terms of where she should
14 fall within the range. I would say this, Judge:
15 Prior to this fight I would have had no problem with
16 her receiving the low end within the range of
17 ninety-seven months. Having seen this, my view of the
18 characteristics of this defendant changed because I
19 was frankly shocked.
20    THE COURT: Why don't you all enlighten me
21 on exactly what this altercation was and what caused
22 it. Do you wish to put on evidence, or what?
23    MR. MINER: Your Honor, I can only put on
24 evidence through Miss Sellers because I wasn't going
25 to bring the other inmate in here and make a circus of

Page 17

1 the proceedings by going through this fight. Because
2 the participants were the only ones who were firsthand
3 witnesses of how it broke out, from what I understand.
4    So the probation officer has done an
5 investigation into this, and Miss Sellers would be the
6 person best suited to provided the Court with
7 background. I believe she's done it in writing.
8    THE COURT: Okay. Well, to the extent that
9 the defendant contends that there should be an
10 adjustment upward based on this alleged altercation,
11 your objection is sustained. I will not adjust the
12 guideline range upward. However, to the extent that
13 the Government wants me to consider this issue in
14 deciding how to sentence her, I'll hear any evidence
15 that you want to present to me.
16    MR. POTI: Judge, we would just want to
17 present to you that this would be aberrant behavior on
18 her part. I know she was tried and convicted on --
19    THE COURT: Right. Where is Miss Sellers'
20 summary here? Do I have that here?
21    THE PROBATION OFFICER: Your Honor, you do
22 have a copy of it.
23    THE COURT: Oh, I see it here. I have it.
24 Just a minute.
25    (Whereupon, the Court examined said

Page 18

1  document.)
2    THE COURT: You say both the defendant and
3  the other inmate agreed that the defendant was the
4  instigator?
5    THE PROBATION OFFICER: Yes, sir, they both
6  did. As a matter of fact, the defendant admitted
7  immediately to the jail personnel that she instigated
8  the physical altercation. They had a verbal
9  altercation prior to that. And they both -- they both
10 have different versions, but they were yelling back
11 and forth at each other.
12   THE COURT: It seems like they're both
13 fairly -- They both seem to be people to get into
14 altercations with other inmates anyway.
15   THE PROBATION OFFICER: Yes, sir.
16   THE COURT: That doesn't excuse her conduct.
17 But go ahead. Anything else you wish to
18 add?
19   MR. POTI: No, sir.
20   THE COURT: Does she wish to be offer any
21 explanation as to why this occurred?
22   MR. POTI: No, sir.
23   THE COURT: I mean getting along in prison
24 is one of the reasons you get time off, if you're a
25 good prisoner. It doesn't seem like she's heading in

Page 19

1  that direction.
2    Yes?
3    MR. MINER: Your Honor, I have nothing more
4  to add factually to what Miss Sellers has said. In
5  the sentencing memorandum I asked for something in the
6  middle of the range. I thought that would be
7  appropriate, and I --
8    THE COURT: Well in light of the fact that
9  her sentencing range now is, or does not include an
10 adjustment for the altercation, what is her sentencing
11 range?
12   MR. MINER: It would be ninety-seven to a
13 hundred and twenty-one months. So essentially one
14 month over eight years to one month over ten years.
15   THE COURT: What is it, now?
16   MR. MINER: Ninety-seven months to a hundred
17 and twenty-one months.
18   THE COURT: Is that correct, Probation?
19   THE PROBATION OFFICER: Yes, sir, that's her
20 sentencing range, ninety-seven to a hundred and
21 twenty-one months.
22   THE COURT: And that does not include the
23 altercation matter?
24   THE PROBATION OFFICER: No, sir, that
25 doesn't.

Page 20

1    THE COURT: Good. Okay. And you're
2  actually asking for a sentence of ninety-seven months
3  that puts her at the bottom end?
4    THE PROBATION OFFICER: Your Honor, I did
5  prior to the altercation, the memorandum that I sent
6  to you and to the Government and the Defense changed
7  my recommendation to midrange of the guidelines
8  because of the altercation; which midrange is nine
9  years, and it adds one year to the sentence that I had
10 previously recommended of ninety-seven months.
11   THE COURT: Which comes out to be what?
12 What are you recommending?
13   THE PROBATION OFFICER: A hundred and nine
14 months.
15   THE COURT: What has the Government
16 recommended?
17   MR. MINER: I recommended a hundred and
18 eight months, Your Honor, which I guess is just shy of
19 the midrange. I would have, apparently as with
20 Miss Sellers, recommended a low end sentence within
21 guideline level thirty in light of her criminal
22 history category, and the fact that it would be
23 slightly more than eight years. And given her role in
24 the offense, I felt that was adequate. But in seeing
25 the conduct in jail, I felt that that pushed her more

Page 21

1  towards the mid level, which admittedly is a long
2  sentence.
3    THE COURT: Now what was her level of
4  participation in the crime? How did you rate her for
5  that?
6    THE PROBATION OFFICER: Your Honor, she did
7  not get role in that.
8    THE COURT: Pardon me?
9    THE PROBATION OFFICER: She did not get any
10 role adjustment at all for the crime.
11   THE COURT: She was just considered a
12 principal, and that's it?
13   THE PROBATION OFFICER: Yes, sir.
14   MR. MINER: Your Honor, for the record,
15 prior to Miss Hooks' trial, the Government dismissed a
16 conspiracy charge and another charge relating to the
17 drugs that were being brought through the bus station
18 when Miss Hooks was picking them up. Had she remained
19 charged on that, of course she would have received
20 some sort of role reduction for that part of the
21 offense because she was simply picking people up from
22 the bus station. But as to the cocaine base which she
23 had in her hand, and according to all of her various
24 stories she brought to the car, I don't feel that a
25 role adjustment would be appropriate.

Page 22

1   THE COURT: Other than receiving the drugs
2 at the station, that is the two men went out to the
3 car that was being driven by Miss Hooks, is that
4 correct?
5   MR. MINER: One of the men did. Her
6 brother, Tony Hooks, was still inside of the bus
7 station. Mr. Wise went to the car on his own.
8   THE COURT: And he's the one who handed her
9 the plastic bag?
10   MR. MINER: No, Your Honor. The testimony
11 was that Miss Hooks gave Mr. Wise the plastic bag, and
12 Mr. Wise was trying to hand it back to her and she
13 took it from him. At least that was the testimony
14 according to Sergeant Collins during trial.
15   THE COURT: Is there any evidence of her
16 relationship to either Wise or to the other man?
17   MR. POTI: She's the brother (sic.) of the
18 man that was not in the car.
19   MR. MINER: And Mr. Wise was seeing, I
20 believe it was her cousin, Your Honor, so everything
21 does go back to her family.
22   THE COURT: Is there any explanation as to
23 why she was there other than to get these drugs?
24 Anything other than just wanting to get the drugs?
25   MR. POTI: No. My client contends that her

Page 23

1 cousin had received a phone call on her cell phone
2 from Mr. Wise instructing her to pick Mr. Wise and Mr.
3 Hooks up at the bus station. Miss Hooks' car was
4 being worked on, and so she -- her cousin gave her car
5 to Miss Hooks and said, "You can use the car to go to
6 work and do what you need to do, but you need to go by
7 the bus station and pick up these passengers."
8   And that's her reasoning as to why she was
9 at the bus station.
10   THE COURT: Is there any evidence that she
11 was being used by either of these men? I'll be honest
12 with you, sometimes you find that a woman is
13 romantically involved with one, and I'd take that into
14 consideration. There may be other motives --
15   MR. POTI: Well certainly not with her
16 brother, but with Mr. Wise there is no indication
17 there, Your Honor. And I believe Mr. Wise still has
18 not been tried on this matter.
19   THE COURT: Is there any evidence that she
20 was involved in any other drugs, drug dealings,
21 whatever, other than this one incident?
22   MR. MINER: No, Your Honor. And that is the
23 reason why, aside from the assault at the city jail, I
24 would have been agreeable to a low end sentence.
25   THE COURT: Anything else?

Page 24

1   MR. POTI: No, sir.
2   THE COURT: But for the assault at the city
3 jail, and when I say "assault" I'm saying essentially
4 the two inmates were assaulting each other and it
5 appears that they were probably both at fault, but I
6 also get the impression that she is not adjusting
7 well, and unfortunately when she gets to the federal
8 system she's going to find that the sentence is going
9 to extend and get longer and longer because she won't
10 get time credit and other credits. The earlier she
11 learns that she's got to adjust and control her
12 temper, the better off she will be.
13   If she had been a model prisoner, an
14 exemplary prisoner, not only do I think she would have
15 qualified for ninety-seven months, but I think she
16 probably could have qualified for less than
17 ninety-seven months. And particularly if she had been
18 truthful about where she got the drugs. If she hadn't
19 made up this incredible lie, she'd be looking at
20 something significantly less than ninety-seven months.
21   But it looks as if she wants to merely
22 continue to represent herself as a full-fledged member
23 of this drug conspiracy. Well it wasn't a conspiracy,
24 but the whole drug transaction involving the
25 twenty-two point one.

Page 25

1   Anything else?
2   MR. POTI: No, sir.
3   THE COURT: I'm going to give her
4 ninety-seven months; however, I would have given her
5 even less if she had been honest with the Court.
6   Anything else before I announce the proposed
7 sentence?
8   MR. MINER: Nothing from the Government.
9   THE COURT: Anything else from Probation?
10   THE PROBATION OFFICER: No, sir.
11   THE COURT: Having made findings as to the
12 objections to the Presentence Report, the Court finds
13 that the offense level is thirty, the criminal history
14 category is one, the guideline range is from
15 ninety-seven to one hundred and twenty-one months, the
16 supervised release period is from two to three years
17 and the fine range is from fifteen thousand to one
18 hundred and fifty thousand dollars.
19   Accordingly, pursuant to the Sentencing
20 Reform Act of 1984, it is the order, judgment and
21 decree of the Court that the defendant, Joanna Nicole
22 Hooks, is committed to the custody -- or I should say,
23 sorry, different language -- the Court having
24 consulted and considered as advisory the sentencing
25 guidelines and in particular the guideline range for

**Page 26**

1  this case, the Court having applied the sentencing
2  factors in Title 18 United States Code, Section
3  3553(a), it is the order, judgment and decree of the
4  Court that the defendant is hereby committed to the
5  custody of the Federal Bureau of Prisons to be
6  imprisoned for a total term of ninety-seven months.
7       The Court recommends that the defendant be
8  designated to a facility where intensive residential
9  substance abuse treatment is available.
10      It is further ordered that the defendant
11 shall pay to the United States District Court Clerk a
12 special assessment fee of one hundred dollars which is
13 due immediately. Furthermore, because of her
14 inability to pay, the Court waives the imposition of a
15 fine.
16      It is further ordered that upon release from
17 imprisonment the defendant shall be placed on
18 supervised release for a term of three years. Within
19 seventy-two hours of release from custody the
20 defendant shall report to the probation office in the
21 district to which she is released.
22      It is further ordered that while on
23 supervised release the defendant shall comply with the
24 mandatory and standard conditions of supervised
25 release on file with the Court.

**Page 27**

1       The Court also orders the following special
2  conditions. The defendant shall participate in drug
3  testing and treatment as directed by her supervising
4  probation officer. She shall contribute to the cost
5  of any treatment based on her ability to pay and the
6  availability of third party payments.
7       She shall submit to a search of her person,
8  residence, office and vehicle pursuant to the search
9  policy of the Court.
10      The defendant shall cooperate in the
11 collection of D N A as directed by her probation
12 officer.
13      The defendant shall study for and pursue her
14 General Equivalency Diploma while on supervised
15 release.
16      The Court finds there is no identifiable
17 victim who incurred a financial loss as a result of
18 this offense.
19      This sentence is imposed at ninety-seven
20 months based on the defendant's lack of serious prior
21 criminal record.
22      Now I ask you at this time are there any
23 objections to the sentence imposed or to the manner in
24 which the Court pronounced it, other than those
25 objections previously stated for the record? For

**Page 28**

1  example, do you have any objection to the Court's
2  ultimate findings of fact or conclusions of law?
3  Furthermore, you are instructed that if you have an
4  objection, you must not only state the objection, you
5  must give the grounds for the objection.
6       THE DEFENDANT: No, sir.
7       THE COURT: Do you have anything to say as
8  to why the sentence as announced should not be
9  imposed, or do you have anything to say in mitigation
10 of the sentence?
11      MR. POTI: No, Your Honor.
12      THE COURT: It is the order, judgment and
13 decree of the Court that the sentence as announced is
14 hereby imposed.
15      Now, Miss Hooks, you have ten days to file
16 any Notice of Appeal. If you cannot afford the cost
17 of an appeal the Court will allow you to appeal at no
18 cost, including furnishing you with a free transcript
19 and a free attorney.
20      You're in the custody of the marshal.
21      Now are you retained?
22      MR. POTI: Appointed, Your Honor.
23      THE COURT: Do you plan on filing an appeal?
24      MR. POTI: Yes, Your Honor.
25      THE COURT: Good. I think she should

**Page 29**

1  appeal. Make sure your notice is timely filed.
2       MR. POTI: Yes, sir.
3       THE COURT: You are excused.
4       (Whereupon, the proceedings were concluded.)
5            * * * * * * * * * *

COURT REPORTER'S CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter as prepared by me to the best of my ability.

I further certify that I am not related to any of the parties hereto, nor their counsel, and I have no interest in the outcome of said cause.

Dated this 10th day of March 2005.

MITCHELL P. REISNER, CM, CRR,
Official US Dist. Court Reporter
Registered Professional Reporter
Certified Real-Time Reporter